IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:19-CR-125-TAV-HBG |
| | ) | |
| RODOLPHO TORRES, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. On March 5, 2019, officers executed a search warrant at Defendant Rodopho Torres's residence, seized firearms and marijuana from the residence, and seized thirty pounds of marijuana from a travel trailer. Based upon the evidence seized in the execution of the search warrant, Defendant Torres was arrested by the Knox County Sheriff's Department on state charges of maintaining a dwelling for drug use, possessing firearms with intent to go armed during the commission of a dangerous felony, drug distribution, and possession of drug paraphernalia. On August 6, 2019, a federal grand jury returned an Indictment [Doc. 1] in the instant federal case, charging Defendant Torres with a single count of being an illegal alien in possession of firearms on March 5, 2019. At the August 7, 2019 preliminary hearing on the state charges, Knox County General Sessions Court Judge Tony W. Stansberry dismissed the state drug and firearms charges arising from the execution of the search warrant. Defendant Torres challenges both the instant federal charge and the execution of the search warrant.

The Defendant argues that his federal charge violates the Full Faith and Credit Clause of Article IV and the Fifth Amendment of the United States Constitution. He contends [Docs. 18 & 37] that Judge Stansberry's dismissal of the state firearms charge requires the dismissal of his federal charge, based upon theories of res judicata and collateral estoppel. The Defendant also argues [Doc. 16] that the officers violated the Fourth Amendment by exceeding the scope of the search warrant when they searched the travel trailer, which was not on his property. He maintains that the Court must suppress all the evidence—the evidence seized from his residence, as well as that seized from the trailer—because the officers' conduct transformed the search warrant into a general warrant.

For the reasons discussed herein, the undersigned finds that while the instant charge arises out of the same circumstances as the Defendant's state charges, it is a separate offense brought by a separate sovereign and is permissible under the dual-sovereignty doctrine. The Court also finds that the General Sessions Court judge's dismissal of the state charges for lack of probable cause bars neither the claim, nor the issues raised by the federal charge. Finally, the Court finds that the officers' search of the travel trailer exceeded the scope of the search warrant. However, the officers' search of the trailer was not a flagrant disregard of the search warrant but, instead, resulted from their negligence. Therefore, the exclusionary rule should not apply to the evidence seized in compliance with the search warrant (i.e., the evidence seized from the Defendant's house and garage) in this case. Accordingly, the undersigned recommends that the Defendant's motions to dismiss the Indictment be denied and that his motion to suppress evidence be denied in part.

2

# I.    BACKGROUND AND POSITIONS OF THE PARTIES

On March 5, 2019, officers from the Knox County Sheriff's Office ("KCSO") executed a state search warrant for the Defendant's residence at 8537 Old Rutledge Pike Road, in Knox County, Tennessee.  The search warrant authorized the search of the residence, garage, and outbuildings.  The officers seized firearms and currency from the Defendant's house, a long gun and marijuana from the Defendant's detached garage, and thirty-five pounds of marijuana from a travel trailer.  The trailer, which belonged to Defendant Torres, was located on 8533 Old Rutledge Pike Road, which belongs to his wife's parents.

Based upon the evidence seized during the execution of the search warrant, the Defendant was charged with four state offenses:  Maintaining a dwelling for drug use, possession of firearms with intent to go armed during the commission of a dangerous felony, drug distribution, and possession of drug paraphernalia.  Knox County General Sessions Judge Tony W. Stansberry conducted a preliminary hearing on these charges on August 7, 2019.  KCSO Lieutenant Chris Bryant testified at the preliminary hearing.  At the conclusion of the hearing, Judge Stansberry dismissed the state charges.

On August 6, 2019, the day before the preliminary hearing on the state charges, a federal grand jury returned the Indictment in the instant case, charging Defendant Torres with being an illegal alien in possession of firearms.

Defendant Torres argues the Indictment must be dismissed, because the state judge's dismissal of the state charges precludes both the claim and the issues raised in the instant case. He contends that the Full Faith and Credit Clause requires the Court to give credit to Judge Stansberry's judgment dismissing his state firearms charge.  He asserts that the doctrines of res judicata and collateral estoppel require dismissal of the federal charge and prevent a second litigation of the constitutionality of the search.  Alternatively, he argues that officers deliberately

3

exceeded the scope of the search warrant by searching the trailer, which was not located on his property. He contends this Fourth Amendment violation converts the search warrant into a general warrant and requires the suppression of all evidence seized on March 5, 2019.

The Government responds that the dual-sovereignty doctrine permits separate sovereigns, here the United States and Tennessee, to prosecute violations of their own laws arising out of the same circumstances. It also maintains that no Fourth Amendment violation occurred in this case, because the trailer was within the curtilage of the Defendant's property. Alternatively, it contends that if the search of the trailer exceeded the scope of the search warrant, the executing officers acted in good faith in searching the trailer. Finally, the Government argues that if the search of the trailer was invalid, only the evidence seized from the trailer should be suppressed.

## II.    SUMMARY OF TESTIMONY

At the evidentiary hearing, the Government presented the testimony of KCSO Lieutenant Chris Bryant. Lieutenant Bryant testified that he has worked with KCSO for nineteen years and has been a supervisor in the narcotics unit since March 2015. Lieutenant Bryant said a confidential informant told him that Defendant Rodolfo Torres was selling marijuana from his residence. The KCSO Narcotics Unit began an investigation of Defendant Torres. Lieutenant Bryant said a reliable confidential informant made three controlled drug buys at the Defendant's residence, 8537 Old Rutledge Pike Road. Two of the controlled buys were from Defendant Torres and one was from his wife. Lieutenant Bryant said the confidential informant was searched before and after the controlled buys and wore an audio recording device. He stated that he reviewed the audio recording after the buys. Based upon the information from the controlled buys, Lieutenant Bryant prepared an affidavit for a state search warrant to search the Defendant's residence.

Lieutenant Bryant said he participated in the execution of the search warrant at the Defendant's residence one day after the last controlled drug buy from that residence. He said upon arrival, law enforcement secured the residence and removed the occupants. He said the Defendant's wife Leslie Rodriguez, her sister, and a child were there. The sister and child were sent next door to the wife's parents' residence. Mrs. Rodriguez was advised of the *Miranda* rights and interviewed outside her residence. Mrs. Rodriguez called the Defendant, and Lieutenant Bryant heard the conversation, which was on "speaker." Lieutenant Bryant said the Defendant declined to return to the house, if Mrs. Rodriguez was being arrested. Mrs. Rodriguez told Lieutenant Bryant that a handgun was located in the headboard in the bedroom.

Lieutenant Bryant said officers searched the house, a detached garage, and a camper over the course of several hours. He said officers seized the following evidence from the master bedroom: Currency, ammunition, and three handguns from a safe; a handgun from a cabinet in the headboard; three long guns, a shotgun, and a handgun from under the bed; a rifle with a foregrip, which was leaning against the nightstand; and a ballistic vest, several magazines, scopes, and ammunition from the drawers under the bed. Lieutenant Bryant said Mrs. Rodriguez acted like she did not know the firearms were there. He stated the officers also found a bag of currency in a hiding area cut into the ceiling of a closet in the living room.

Lieutenant Bryant testified that officers searched the garage and found a long gun in a cabinet and a block of marijuana in a cooler. The officers also found ammunition, jars and gallon bags containing marijuana, a grinder, and digital scales in the garage. Lieutenant Bryant said after searching the house, the garage, the vehicles, and a shed, officers checked the perimeter of the property to see if they had missed anything. He said that they had a map containing an overview of the property with a gray line marking the boundary. At this time, Lieutenant Bryant was inside the house completing paperwork. The officers located a travel

5

trailer at the bottom of the hill. He said the gravel driveway to the Defendant's residence continued beyond the garage, where the vehicles were parked, and down a hill to the trailer. He said the trailer was between 100 and 200 yards from the Defendant's garage. The trailer was not hooked to a vehicle, and an electrical cord extended from the trailer up the hill.

Lieutenant Bryant said the trailer was padlocked but officers could see a knife and marijuana residue through the trailer's window. Lieutenant Bryant said he looked through the window of the trailer and thought it likely contained more evidence of marijuana. He directed the officers to open it. The officers seized thirty-five pounds of packaged marijuana and packing materials from the trailer. Lieutenant Bryant said he did not know that the trailer was on 3733 Old Rutledge Pike Road and not on the Defendant's property until just before the preliminary hearing in state court.

On cross-examination, Lieutenant Bryant estimated that he had sought over one hundred search warrants over the course of his career. He said the instant search warrant was signed by Judge Scott Green and that an overview photograph designating the property lines was included as an attachment to the search warrant. Lieutenant Bryant agreed that the Defendant's residence is at 8537 Old Rutledge Pike Road and that 8533 Old Rutledge Pike Road is the neighboring residence. He acknowledged that the search warrant did not permit him to search the residence at 8533 Old Rutledge Pike Road. He said he briefed the officers on the search warrant prior to the execution of the search warrant.

Lieutenant Bryant agreed that at the time the officers searched the trailer, no exigent circumstances were present. He said he looked through the window of the trailer and saw marijuana residue. He agreed that based upon the map and the briefing, the officers should have known that the trailer was not on the Defendant's property. He said he did not look at the attachment containing the map of the property again before searching the trailer. He said the

6

officers broke the padlock off the trailer with a pry bar. Lieutenant Bryant agreed that the trailer was not on the property at 8537 Old Rutledge Pike Road.

On redirect examination, Lieutenant Bryant stated the property lines were not physically marked on the Defendant's property. He said the trailer was at the end of the driveway that ran along the Defendant's property line.

Also, for the purposes of the suppression hearing, the parties stipulated to the following facts: The property at 8537 Old Rutledge Pike Road belonged to Defendant Torres and his wife. The property at 8533 Old Rutledge Pike Road belonged to the Defendant's wife's parents. The trailer located at 8533 Old Rutledge Pike Road belonged to the Defendant.

### III.    FINDINGS OF FACT

The Court makes the following factual findings, based upon the testimony and exhibits offered at the December 18, 2019 evidentiary hearing and the parties' stipulations.

On March 5, 2019, KCSO officers executed a state search warrant for the residence, garage, and outbuildings located at 8537 Old Rutledge Pike Road, the property of Rudolfo Torres and Leslie Rodriguez. Officers seized firearms from the master bedroom and a firearm and marijuana from the detached garage. While walking the perimeter of the property following the search of the house, garage, vehicles, and shed, officers discovered a travel trailer at the end of the Defendant's driveway. Although KCSO Lieutenant Chris Bryant did not realize it at the time, the trailer was located across the property line, on 8533 Old Rutledge Pike Road. Lieutenant Bryant looked through the trailer's window and saw marijuana residue and a knife inside. Lieutenant Bryant directed the officers to break the padlock on the trailer's door and to search the trailer. Officers seized thirty-five pounds of marijuana from the trailer.

## IV.  ANALYSIS

The Court first examines whether the state court's dismissal of the Defendant's state drug and firearms charges precludes the subsequent prosecution of either the federal firearms charge or the Fourth Amendment issues in this case.  Second, assuming this Court may decide the Fourth Amendment issues, the Court will analyze whether law enforcement exceeded the scope of the search warrant and, if so, to what effect on the evidence in this case.

### A.  Claim or Issue Preclusion

Defendant Torres argues that the Indictment must be dismissed, because principles of res judicata (claim preclusion) and collateral estoppel (issue preclusion) bar a second litigation of both the claim and the issues in this case.  He contends that pursuant to res judicata, the Knox County General Sessions judge's dismissal of his state firearms charge precludes the instant federal charge.  Regarding collateral estoppel, the Defendant contends that the dismissal of the state charges precludes a second litigation of the issues of the lawfulness of the search, the suppression of the evidence, and Defendant's possession of firearms.

The Government responds that claims of res judicata and collateral estoppel do not apply to successive prosecutions by different sovereigns.  It contends that the federal charge is not precluded because dual-sovereignty doctrine permits both state and federal governments to prosecute a defendant for the same conduct.  The Government also asserts that the doctrine of collateral estoppel does not apply because the federal Government is not the same as or in privity with the state government in this case.

*(1) Res Judicata / Claim Preclusion*

8

The Defendant's challenge to the Indictment raises issues at the intersection of the Double Jeopardy Clause[1] and the Full Faith and Credit Clause. The Double Jeopardy Clause provides that no one "shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., Amend. V. Just over fifty years ago, the Supreme Court held that the protections afforded by the Double Jeopardy Clause also apply to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794 (1969). The Full Faith and Credit Clause in Article IV, § 1, requires every state to respect "the public Acts, Records, and judicial Proceedings of every other State." Congress implemented this clause in 28 U.S.C. § 1738, which provides, in pertinent part, that a state's judicial proceedings "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State . . . from which they are taken."

The Defendant argues that the Full Faith and Credit Clause and the principle of res judicata prevent the instant federal prosecution. "Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United* States, 440 U.S. 147, 153 (1979). Defendant Torres contends that, because this Court must give full credit to the Knox County General Session judge's dismissal of the state

---

[1] The Defendant initially protests [Doc. 25] that he is not raising a Double Jeopardy claim, only a Full Faith and Credit claim, which must be decided under Tennessee law. However, the Defendant's reliance on common law doctrines of autrefois acquit and collateral estoppel bring the Double Jeopardy Clause into play. The Double Jeopardy Clause embodies the protections provided by the doctrines of autrefois acquit and collateral estoppel. *United States v. Wilson*, 420 U.S. 332, 340 (1975) (observing that from as early as the 17th century, "the protection afforded by the principle of double jeopardy [was viewed as] a function of three common-law pleas: autrefois acquit, autrefois convict, and pardon"); *Ashe v. Swenson*, 397 U.S. 436, 445 (1970) (holding the Double Jeopardy clause embodies collateral estoppel); *see also Grady v. Corbin*, 495 U.S. 508, 530 (1990) (Scalia, J., dissenting) (observing "[t]he [Double Jeopardy] Clause was based on the English common-law pleas of auterfoits acquit and auterfoits convict"), *overruled by United States v. Dixon*, 509 U.S. 688, 704 (1993) (overruling the same conduct test and affirming the "many proofs" provided in Judge Scalia's dissent in *Grady*).

firearms charge, the federal Government cannot again prosecute him for the possession of firearms on March 5, 2019. He maintains that both the state and federal governments are in privity of subject matter, because both have the same interest in proving his possession of firearms. The Defendant concludes that permitting a second litigation of the claim that he possessed firearms unlawfully would violate comity, which is the public policy that requires an actual end to litigation.

The Government argues that this issue is controlled by the dual-sovereignty doctrine and that res judicata does not apply to successive criminal prosecutions by separate sovereigns. It contends that no facts show the United States and the State of Tennessee to be in privity with regard to the state's case against Defendant Torres. Moreover, the Government contends that it has a distinct interest in enforcing federal law. Thus, it maintains that the state judge's dismissal of the Defendant's state firearms charge does not preclude the instant federal charge.

The "dual-sovereignty doctrine" provides "that a crime under one sovereign's laws is not 'the same offense' as a crime under the laws of another sovereign," even if the two sovereigns prosecute the individual for the same conduct. *Gamble v. United States*, 139 S. Ct. 1960, 1963 (2019). The dual-sovereignty doctrine is not an exception to the Double Jeopardy Clause but, instead, flows directly from the text of the Fifth Amendment, which prohibits "'being twice put in jeopardy 'for the same *offense*,' not for the *same conduct or actions*.'" *Id.* at 1965 (quoting *Grady v. Corbin*, 495 U.S. 508, 529 (1990) (Scalia, J., dissenting)). "[A]n 'offense' is defined by a law, and each law is defined by a sovereign. So where there are two sovereigns, there are two laws and two 'offenses.'" *Id.* In upholding the dual-sovereignty doctrine in *Gamble*, the Supreme Court observed it was affirming 170 years of precedent. *Id* at 1964, 1966-67.

In the instant case, Defendant Torres is charged with a violation of federal law, possession of a firearm by an illegal alien in violation of 18 U.S.C. § 922(g)(5). In contrast,

10

Judge Stansberry dismissed the Defendant's charge of possession of firearms with intent to go armed in furtherance of a dangerous felony in violation of Tennessee law. *See* Tenn. Code Ann, § 39-17-1324(a). The Court finds that the dual-sovereignty doctrine permits the instant federal prosecution, even though the Defendant has already faced a state charge arising out of the same conduct. In other words, prosecution of the instant federal offense does not fail to credit the state judge's determination of the state offense, because they are separate offenses by prosecuted by separate sovereigns. Pursuant to the dual-sovereignty doctrine, the state court's dismissal of the state offense does not preclude the instant federal charge.

The Defendant argues the Supreme Court's analysis in *Gamble* demonstrates that claim preclusion applies when the state and the federal governments are actually the "same sovereign," because they have concurrent jurisdiction over the same legal issue. The Defendant argues that *Houston v. Moore,* 18 U.S. 1 (1820) and *United States v. Furlong*, 18 U.S. 184 (1820) stand for the proposition that when two sovereigns have concurrent jurisdiction over the same legal issue, a decision on that issue by one sovereign precludes litigation of the issue by the second sovereign. Defendant contends that *Gamble* affirms *Houston* and *Furlong* and, thus, leaves room for claim preclusion in this case. He asserts that here, both the state and federal governments have concurrent jurisdiction over the same law, the Fourth Amendment. Thus, the Defendant concludes that Tennessee and the United States are the same sovereign and the dual-sovereignty doctrine does not apply.

The Court finds Defendant Torres's argument conflates claim and issue preclusion. In *Gamble*, the defendant argued that two early Supreme Court cases, *Houston* and *Furlong*, supported his argument that early American common law disfavored successive prosecutions by separate sovereigns. 139 S. Ct. at 1976-77. The Supreme Court held to the contrary, determining that *Houston* and *Furlong* instead conform to and support the dual-sovereignty

11

doctrine. *Id.* at 1979. In *Houston*, "a member of the Pennsylvania militia was tried by a state court-martial for the *federal offense* of deserting the militia." *Gamble*, 139 S. Ct. at 1977 (emphasis in original); *Houston*, 18 U.S. at 1. The Supreme Court determined the holding in *Houston* "squared" with the dual-sovereignty doctrine:

> the law prohibits two sovereigns (in that case Pennsylvania and the United States) from both trying an offense against one of them (the United States). That is consistent with our doctrine allowing successive prosecutions for offenses against *separate sovereigns*. In light of this reading of *Houston*, the case does not undercut our dual-sovereignty doctrine.

*Gamble*, 139 S. Ct. at 1977. In the instant case, unlike in *Houston*, Tennessee and the United States are not prosecuting the Defendant for a violation of the same law.

*Gamble* also found that the analysis in *Furlong* supported the dual-sovereignty doctrine. *Id.* at 1978. In *Furlong*, the Supreme Court distinguished between the crimes of piracy and murder, holding that an acquittal of piracy by one nation prohibits prosecution for piracy in another nation because piracy is "'an offense within the criminal jurisdiction of all nations[.]'" *Gamble*, 139 S. Ct. at 1978. However, the Court held an acquittal of murder in the United States did not bar a prosecution for murder in England, "because murder is 'punishable under the laws of each State' rather than falling under some universal jurisdiction." *Id.* (quoting *Furlong*, 18 U.S. at 197). Thus, the Court held that "[w]hen it came to crimes that were understood to offend against more than one sovereign, *Furlong* treated them as separate offenses—just as we have a dozen times since, and just as we do today." *Id.* The Defendant's state firearms charge and the instant federal firearms charge are separate crimes offending separate sovereigns and, thus, the Defendant's prior state prosecution does not bar the instant federal prosecution. *See also Smith v. United States*, 243 F.2d 877, 878 (6th Cir. 1957) (per curiam) (concluding that res judicata did not bar federal prosecution for failure to purchase a gambling stamp, following defendant's

acquittal of violation of city ordinance regarding lottery, even though both prosecutions arose out of same act).

Defendant Torres argues that both the state and federal government have concurrent jurisdiction to enforce the Fourth Amendment and, thus, are effectively the same sovereign with regard to unreasonable searches and seizures. He argues that *Gamble* supports this interpretation, because it recognizes that evidence gained in violation of the Fourth Amendment by state law enforcement cannot be used in a subsequent federal case. *See* 139 S. Ct. at 1979. However, by seizing on this one line of *Gamble*, the Defendant conflates issue preclusion (discussed in the next section) with preclusion of the entire claim or case.

In *Gamble*, the defendant argued that the incorporation of the Double Jeopardy Clause to the states abolished the dual-sovereignty doctrine, just like incorporation of the Fourth Amendment abolished the silver platter doctrine.[2] *Id.* The Supreme Court distinguished the effect of incorporation on the dual-sovereignty doctrine from the effect of incorporation on the silver platter doctrine: The application of the Fourth Amendment to the states eliminated the silver-platter doctrine, and "[n]ow, the fruits of unreasonable state searches are inadmissible in federal and state courts alike." *Id.* This is because the premise underlying the silver-platter doctrine (that the state search did not violate federal law, because federal law did not apply) no longer exists. *Id.* In contrast, the Court held that the premises underlying the dual-sovereignty doctrine—that each sovereign has a separate interest in enforcing its own law and that only successive prosecutions by the same sovereign are prosecutions for the same offense—continued

---

[2]Before the Fourth Amendment applied to the states, federal law did not bar the admission of evidence gained in a state search by state law enforcement, even if that evidence would have been suppressed by a federal court if seized by federal agents. *Gamble*, 139 S. Ct. at 1979. "[U]nder what was termed the 'silver-platter doctrine' state authorities could hand such evidence over to federal prosecutors for use in a federal case." *Id.* However, after the Fourth Amendment was held to apply to the states, the silver-platter doctrine was eliminated. *Id.*

to exist after the incorporation of the Fifth Amendment to the states.  *Id.*  This analysis in *Gamble* does not compel a finding that the United States and Tennessee are the same sovereign in this case.

Finally, the Defendant suggests that the dual-sovereignty doctrine does not apply when a defendant is acquitted in the initial prosecution.  He contends that the doctrine of autrefois acquit[3] bars a second prosecution, even when the doctrine of autrefois convict would not.  *See Gamble*, 139 S. Ct. at 1975 (noting parenthetically that a prior acquittal has a different preclusive effect than a prior conviction).  The Court questions this conclusion.  Under the Double Jeopardy Clause, a prior acquittal and a prior conviction have the same preclusive effect on a subsequent claim:

> The Double Jeopardy Clause of the Fifth Amendment applies in the same manner to a prosecution following a prior conviction as it does to a prosecution following a prior acquittal. *See Ex parte Lange*, 18 Wall. 163, 169, 172, 21 L.Ed. 872; *United States v. Ball*, 163 U.S. 662, 669, 16 S. Ct. 1192, 1194, 41 L.Ed. 300. This is consistent with the fact that, although autrefois acquit and autrefois convict were separate pleas in bar in the English law, they have historically been given the same scope. *See* 4 *Blackstone Commentaries* \*335—336; 2 Hawkins, *Pleas of the Crown* (8th ed. 1824), pp. 515—529.

*Abbate v. United States*, 359 U.S. 187, 199 n.3 (1959).

However, even if autrefois acquit were applied in this case, it would not preclude the instant federal charge.  Setting aside the question of whether Judge Stansberry's dismissal of the Defendant's state charges for lack of probable cause constitutes an acquittal (a topic explored in the context of issue preclusion below), autrefois acquit only applies when the crimes charged in the prior and subsequent indictment are "precisely the same."  *Young v. State*, 206 S.W.2d 805,

---

[3] Autrefois acquit is a "plea in bar to a criminal action, stating that the defendant has been once already indicted and tried for the same alleged offense and has been acquitted."  *Black's Law Dictionary* 170 (Rev'd 4th ed. 1968).

14

805-06 (Tenn. 1947). "Thus, if there be a material variance between the averments, the two prosecutions are separate as a matter of law." *Young*, 206 S.W.2d at 806. In the instant case, the Defendant's state charge for possession of firearms with intent to go armed in furtherance of a dangerous felony and the federal charge of possession of a firearm by an illegal alien each require proof of an element that the other does not. *See* 18 U.S.C. § 922(g)(5) & Tenn. Code Ann. § 39-17-1324(a). Accordingly, the doctrine of autrefois acquit does not apply in this case.

In summary, the Court finds that the dual-sovereignty doctrine permits the Government to bring the instant charge against Defendant Torres. The Full Faith and Credit Clause does not require otherwise, because the state and federal offenses are separate offenses. The Government's prosecution of the federal offense does not fail to credit the state judge's ruling on the state offense.

### (2) Collateral Estoppel / Issue Preclusion

The Defendant also argues that the doctrine of collateral estoppel compels the dismissal of the Indictment in this case. The doctrine of collateral estoppel provides "that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). The Defendant argues that in dismissing the state charges for lack of probable cause, Judge Stansberry necessarily found that he did not possess firearms on March 5, 2019, and that the search warrant was executed in violation of the Fourth Amendment, requiring the suppression of all the evidence. Thus, he asserts that the Government is estopped from relitigating these issues in this case. The Defendant contends that the state and the federal governments are in privity, because they have concurrent jurisdiction over the Fourth Amendment and they have the same interest in litigating the Fourth Amendment and firearms possession issues. Thus, he argues that Judge Stansberry's dismissal of the state charges

15

precludes litigation in this Court of the Fourth Amendment issues and the issue of whether he possessed firearms.

The Government maintains that the doctrine of collateral estoppel does not apply to successive prosecutions by *separate* sovereigns. The Government contends that because it was neither a party to nor privy to the state court proceedings, it is not collaterally estopped from relitigating the admissibility of the evidence in this case.

Our appellate court addressed the question of issue preclusion in the context of a Fourth Amendment issue in *United States v. Dominguez*, 359 F.3d 839 (6th Cir. 2004). In *Dominguez*, the Defendant was charged with state drug trafficking offenses, but the state trial court suppressed the evidence seized pursuant to a state search warrant, due to a Fourth Amendment violation, and dismissed the state charges. *Id.* at 841. Following the dismissal of the state drug trafficking charges, the federal government charged Dominguez with drug trafficking based upon the same evidence that was suppressed by the state court. *Id.* The federal district court granted Dominguez's motion to suppress the evidence, finding that the government was "collaterally estopped from litigating that issue as a privy to the state[.]" *Id.* The appellate court reversed the district court, concluding that the state and federal prosecutors were not in privity under Michigan law and that, *even if they were*, application of collateral estoppel in this circumstance would have a dire effect on federal sovereignty. *Id.* at 845-46. The court observed that finding state and federal prosecutors to be in privity would waste resources, because the Department of Justice would have "to involve itself closely in all [state] criminal prosecutions implicating some federal crime." *Id.* at 845.

In *Dominguez*, the Court held that the Full Faith and Credit Clause required it to give the same preclusive effect to issues litigated in a state criminal proceeding as would be given under the law of that state. *Id.* at 841 (citing *Miga v. Warren City School Dist.*, 465 U.S. 75, 81 (1984)

16

& *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). Thus, the Court first looked to state law to determine whether collateral estoppel barred litigation of the Fourth Amendment issue in the subsequent federal case. *Id.* Here, Defendant Torres argues that litigation of the Fourth Amendment issues in the instant case is barred by Tennessee law on collateral estoppel.

Tennessee defines collateral estoppel in conformity with federal case law as follows: "when an issue of fact has been determined by a valid and final judgment, it may not be litigated by the same parties in any future litigation." *State v. Thompson*, 285 S.W.3d 840, 847 (Tenn. 2009) (citing *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). Assessing whether collateral estoppel bars litigation of an issue is a fact-intensive undertaking, requiring the court to "consider the indictment and pleadings, the evidence, the instructions to the jury, and any other relevant matter 'in a practical frame and viewed with an eye to all the circumstances of the proceedings.'" *Id.* at 848 (quoting *Ashe*, 397 U.S. at 444). "The burden is on the party asserting collateral estoppel to demonstrate that a specific point at issue has been previously and finally decided." *Id.* Under both Tennessee and federal law, a criminal defendant may use collateral estoppel defensively, to block the prosecution of an issue, but the government may not use the doctrine offensively, to avoid its burden of proving the same facts in a second prosecution. *Id.* at 849 (citing *United States v. Dixon*, 509 U.S. 688, 710 n. 15 (1993)).

"To prevail on a claim of collateral estoppel, a party must establish:"

> (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

17

*Bowen ex rel Doe v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016) (quoting *Mullins v. State*, 294 S.W.3d 529, 535 (2009)). The Government contends that it was not in privity with the state prosecutor, that it did not have a full and fair opportunity to litigate the Fourth Amendment issues in the state proceeding, and that the dismissal of the charges was not a decision on the merits of the Fourth Amendment or possession of the firearms issues. Thus, the second, fourth, and fifth requirements are at issue here. The Court examines these requirements in turn.

(i) *Final determination*

"'Collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit.'" *Thompson*, 285 S.W.3d at 849 (quoting *Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn. 1987)). The Government asserts that Judge Stansberry's dismissal of the charges for lack of probable cause was not a full and final determination of the suppression issues and the question of whether Defendant Torres possessed firearms. The Defendant has produced the state judgment [Doc. 17-3] dismissing the possession of firearms with intent to go armed in furtherance of a dangerous felony charge on August 7, 2019. The Defendant has also produced the transcript of the preliminary hearing [Doc. 26]. He argues that counsel raised the issues of the invalid execution of the search warrant and the lack of any evidence connecting him to the firearms in the residence at the preliminary hearing. The Defendant contends that Judge Stansberry's dismissal of the firearms charges was necessarily a ruling in the Defendant's favor on these issues. The Defendant also characterizes Judge Stansberry's dismissal of the charge as an acquittal.

The Court finds that the dismissal of a charge at a preliminary hearing is not a full and final determination of the admissibility of evidence. "[T]he purpose of the preliminary hearing is to determine whether there is evidence sufficient to justify the continued detention of the

18

defendant and subjecting him to the expense, embarrassment, humiliation, and inconvenience of a trial." *Waugh v. State*, 564 S.W.2d 654, 659 (Tenn. 1978). A dismissal of a charge at the preliminary hearing does not bar a grand jury from returning an indictment charging the defendant with the same offenses that were the subject of the preliminary hearing:

> [A]s every lawyer and judge familiar by experience with the prosecutorial processes knows, the authority and power of a Grand Jury to consider a case and return a presentment or an indictment upon finding probable cause is in no way interfered with or prevented by the fact that a committing magistrate fails to find probable cause and discharges the accused in a preliminary hearing. It happens frequently. It could not be otherwise without seriously impairing this vital part of the Grand Jury's function. If the Grand Jury were precluded from investigating an alleged offense previously upon a preliminary hearing by a committing magistrate because he found no probable cause, such action by the magistrate would amount to acquittal of the accused. Of course, this cannot be.

*State v. D'Anna*, 506 S.W.2d 200, 204 (1973); *see also* Tenn. R. Crim. P. 5.1(c) (providing when magistrate judge does not find probable cause at the preliminary hearing, the prosecution is not precluded from bringing a subsequent prosecution for the same offense); *State v. Lawson*, No. M2017–00238–CCA–R3–CD, 2017 WL 4407832, *4 (Tenn. Crim. App. Oct. 3, 2017) (holding the magistrate judge's finding at preliminary hearing that evidence did not show defendant hit the victim did not bar subsequent indictment for domestic violence causing bodily injury). The Court finds that Judge Stansberry's dismissal of the state firearms charge is not a final determination of the Fourth Amendment issue or the Defendant's possession of firearms on March 5, 2019.

### (ii) Privity & Fair Opportunity

Defendant Torres argues that the state and federal prosecutors are in privity because both have the same interest in showing the Defendant possessed the firearms, that the seizure of the firearms was lawful, and that the firearms should not be suppressed. He contends that under

19

Tennessee law, privity requires mutuality of interest in the subject matter and is not based on the relationship of the parties. In 2016, the Tennessee Supreme Court abolished a "strict party mutuality requirement for . . . collateral estoppel" and adopted guidelines for courts in "determining whether nonmutual collateral estoppel applies." *Bowen*, 502 S.W.3d at 104. Generally, litigation of issues decided in previous lawsuits is precluded "unless the party against whom collateral estoppel is asserted lacked a full and fair opportunity to litigate the issue in the first action or some other circumstance justifies affording that party an opportunity to relitigate the issue." *Id.* at 116 (adopting § 29 of the Restatement (Second) of Judgments). This guideline applies to issues determined in a criminal prosecution when the judgment is against the prosecutor. *Id.* at 113 (adopting § 85 of the Restatement (Second) of Judgments).

In the instant case, the Court questions whether the Government had a full and fair opportunity to litigate the issues of the admissibility of evidence in the preliminary hearing. As discussed above, the purpose of the preliminary hearing was to show probable cause for the charges. In this regard, the Court notes that the state prosecutor did not argue that the officers acted in good faith, as the Government does now. However, even if the federal prosecutor could be considered to be in privity with the state prosecutor, collateral estoppel should not apply, because Judge Stansberry's dismissal of the state firearms charge is not a final determination of the Fourth Amendment issues. If Judge Stansberry's dismissal of the state firearms charge would not prevent the state prosecutor from seeking an indictment for the same offense, the Court does not find that it prevents a federal prosecutor from seeking to prosecute the Defendant for a different firearms offense.

The Court finds that neither the Full Faith and Credit Clause nor Tennessee law require preclusion of the Fourth Amendment and possession of firearms issues in this case. The Defendant argues that the protection against double jeopardy supports applying collateral

estoppel. Quoting from Justice Gorsuch's dissent in *Gamble*, he argues that "[a] free society does not allow its government to try the same individual for the same crime until it is happy with the result." 139 S. Ct. at 1996. The Defendant asks the Court not to allow the prosecution a second bite of the apple in this case. However, here the Defendant has had no trial and no acquittal with regard to his alleged possession of firearms on March 5, 2019. The apple as yet remains intact.

In summary, neither claim nor issue preclusion bar the charge in this case. The Defendant's motions [Docs. 18 & 36] to dismiss the Indictment should be denied.

### B. Propriety of Search

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. Searches must be pursuant to a warrant, which "shall issue[ only] upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id.* In the instant case, Defendant Torres argues law enforcement officers violated his rights under the Fourth Amendment by exceeding the scope of the search warrant and searching a trailer located on the adjacent property. The Defendant maintains that the officers' deliberate search of the trailer converted the search warrant into a general warrant, which requires suppression of all evidence seized during the search. The Government responds that no Fourth Amendment violation occurred, because the trailer was within the curtilage of the Defendant's home. Alternatively, it maintains that the officers acted in good faith and that the remedy for exceeding the scope of the search warrant should be suppression of only that evidence seized from the trailer.

The Court first examines whether the search of the trailer exceeded the scope of the search warrant and, second, if it did, whether and which evidence must be suppressed.

21

*(1) Curtilage*

The parties stipulate [Doc. 29] that the trailer searched on March 5, 2019, was located on 8533 Old Rutledge Pike Road. The search warrant [Doc. 17-1] authorized the officers to search the residence and outbuildings located at 8537 Old Rutledge Pike Road. Thus, the search of the trailer exceeded the scope of the search warrant. The Government disagrees, arguing that although the trailer was located on 8533 Old Rutledge Pike Road, it was within the curtilage of 8537 Old Rutledge Pike Road. The Government contends that the trailer's close proximity to the Defendant's home and its location at the end of the gravel driveway that runs past the Defendant's home show the trailer to be within the Defendant's curtilage.

At the heart of the Fourth Amendment is the individual's right to be free of governmental intrusion in his or her home. *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018). This freedom extends also to the curtilage, which is the "area 'immediately surrounding and associated with the home'" and is considered to be "'part of the home itself for Fourth Amendment purposes.'" *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)). "The curtilage concept originated at common law to extend to the area immediately surrounding a dwelling house the same protection under the law of burglary as was afforded the house itself." *United States v. Dunn*, 480 U.S. 294, 300 (1987). The curtilage is "the area around the home to which the activity of home life extends." *Id.* at 302. "'The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened.'" *Collins*, 138 S. Ct. at 1670 (quoting *California v. Ciraolo*, 476 U.S. 207, 212–13 (1986)).

From these principles, the Court can readily deduce that a structure or an area on another's property is not part of one's curtilage. The concept of curtilage is linked directly with

22

the home, where one enjoys the strongest expectation of privacy. An individual has no expectation of privacy in his or her neighbor's property, however close it may be to his or her own home. Accordingly, the Court finds that the trailer was not within the curtilage of the Defendant's home and the officers' search of the trailer exceeded the scope of the search warrant.

### (2) Suppression of Evidence

Defendant Torres argues that the remedy for the unconstitutional search of the trailer is the suppression of all the evidence seized on March 5, 2019, to include that evidence seized from his house and garage. He maintains that the officers' search of a place not authorized by the search warrant turned the search warrant into a "general warrant," thereby requiring suppression of all the evidence seized.

"A search pursuant to a valid warrant may devolve into an invalid general search if the officers 'flagrant[ly] disregard . . . the limitations of [the] search warrant.'" *United States v. Garcia*, 496 F.3d 495, 507 (6th Cir. 2007) (quoting *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir. 1985)). In analyzing whether a search pursuant to a warrant has become a general search, courts "will find that an officer flagrantly disregards the limitations of a warrant only where he 'exceed[s] the scope of the warrant in the places searched' (rather than the items seized)." *Id.* (quoting *Waller v. Georgia*, 467 U.S. 39, 43 n. 3 (1984)). "The test for determining if the officers engaged in an impermissible general search is whether their search *unreasonably* exceeded the scope of the warrant." *Id.* The remedy for seizure of an item not authorized by the search warrant is the suppression of that item, but the remedy for searching a place not authorized by the search warrant is the suppression of all the evidence seized during the search. *Id.*

The Government contends that suppression of all evidence is not appropriate in this case because the officers' search of the trailer did not unreasonably exceed the scope of the search warrant. It contends that the trailer was located near the property line and at the end of the driveway leading from the Defendant's residence. The Defendant argues that if Lieutenant Bryant had simply referred to the plat map attached to the search warrant, he would have known that the trailer was across the property line. However, Lieutenant Bryant testified that he did not review the attachment to the search warrant at the time he told the officers to search the trailer, and that he did not realize the trailer was on the neighboring property until shortly before the preliminary hearing on August 7, 2019.

The test for determining whether the search of the location outside the scope of the search warrant constitutes a "flagrant disregard" for the limitations in the search warrant "is whether the officers' actions were reasonable." *United States v. King*, 227 F.3d 732, 751 (6th Cir. 2000). In *King*, the officers exceeded the scope of the search warrant for the first-floor unit of a duplex by searching the basement of the duplex, which was shared by the two units. *Id.* at 750. The Court held the officers acted unreasonably, because the "nature of the location of the basement in this two-unit dwelling should have put the officers on notice that the search warrant did not include this area." *Id.* at 751. The basement was not a "common area," like the lobby of an apartment building, and the search warrant and supporting affidavit specifically identified only the first-floor unit as the location of drug trafficking. *Id.* at 752. Moreover, although the defendant's mother and siblings lived in the upper unit and all the residents used the duplex as one unit, the officers were not aware of this at the time of the search. *Id.* Thus, the court found the officer's actions to be unreasonable, because both the search warrant and the circumstances of the search indicated the basement was a location outside the warrant's scope. *Id.* at 752-53.

24

In determining whether the executing officers acted reasonably, the Court examines the information known to the officers at the time they searched the place not within the warrant's scope. *United States v. Muse*, 729 F.Supp.2d 905, 911 (E.D. Mich. 2010). In *Muse*, officers executing a search warrant for a commercial office at suite number 218 also searched suite number 218A. *Id.* at 908-09. The court held the following facts indicated the officers acted unreasonably in searching suite 218A:

> There is no proper way a reasonable person could conclude that Suites 218 and 218A were part of the same unit on May 2, 2006. Suite 218A was distinct, different, separate, discrete, and clearly identified as such. There was no access from one suite to the other. Entry to Suite 218A was restricted by a separate lock and key. The signage was distinct. The name on the door identified a business that was not the focus of the investigation or even mentioned in the search warrant affidavit. The record shows that the agents were not only on constructive notice of the separateness of the units, they had actual notice, which prompted a call to the AUSA.

*Id.* at 912. The court held the search of suite 218A to be a warrantless search, falling within no exception to the warrant requirement, and, thus, unreasonable. *Id.*

In the instant case, the Court finds that the officers did not unreasonably exceed the scope of the search warrant in searching the trailer. First, both the search warrant, and the supporting affidavit authored by Lieutenant Bryant, expressly reference the search of outbuildings on the Defendant's property. The search warrant [Doc. 17-1, pp.9-10] permits the search of a "single family type residence and outbuildings with an address of 8537 Old Rutledge Pike, Knoxville, Knox County, Tennessee." The supporting affidavit states that "[o]utbuildings on drug dealer's premises are often used to store illegal drugs and proceeds from the sale of illegal drugs" [Doc. 17-1 p.7]. Unlike in *King*, where the basement was not mentioned in the search warrant, the officers executing the search warrant for 8537 Old Rutledge Pike Road knew they could search outbuildings.

Second, the Court finds the location of the trailer suggested that it was linked to the Defendant's property. The trailer was at the end of a gravel driveway that is shared by 8533 and 8537 Old Rutledge Pike Road. Most of the driveway is on 8537 Old Rutledge Pike Road. After the driveway passes the Defendant's garage, it remains on the Defendant's property past several outbuildings, until it extends through a wooded stretch and terminates at the trailer. From the materials presented to the Court, it appears the only pathway to the trailer is via the driveway on the Defendant's property. Unlike in *Muse*, nothing about the trailer indicated to whom it belonged or that it was on a separate property. Moreover, the properties bore no physical markers of the property line. The Court finds the officers' negligence in failing to consult the map was not a flagrant disregard of the limitations of the search warrant. Accordingly, the Court finds that the search of the trailer does not convert the entire search on March 5, 2019, into a general search, and only that evidence seized from the trailer is subject to the exclusionary rule. The "good faith" analysis below supports this finding.

### (3) Good Faith

The Court next examines the Government's argument that the officers acted in good faith in searching the trailer. The purpose of excluding evidence gained in violation of the Fourth Amendment is to deter future Fourth Amendment violations by law enforcement. *United States v. Calandra*, 414 U.S. 338, 347-48 (1974) (observing that the exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect"). Accordingly, the Supreme Court has carved out exceptions to the exclusionary rule such as the good faith exception set out in *United States v. Leon*, 468 U.S. 897, 922 (1984). The exclusionary rule should not be applied "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope."

26

*Id.* at 920. If the officer's reliance on the search warrant was "objectively reasonable," suppressing the evidence seized pursuant to a faulty warrant has no deterrent effect on the officer. *Id*. at 922.

In the instant case, it is the officers' conduct in exceeding the scope of the search warrant, rather than any defect in the search warrant itself, that is the basis for suppression. Accordingly, the exception carved out by *Leon* does not apply. However, that is not the end of the analysis of the exclusionary rule. The Supreme Court has determined that exclusion is not appropriate when a Fourth Amendment violation results from police negligence. In *Herring v. United States*, the Court declined to apply the exclusionary rule to a Fourth Amendment violation stemming from the negligence of police personnel in failing to remove a withdrawn arrest warrant from the computer, finding that an "error that arises from nonrecurring and attenuated negligence is thus far removed from the core concerns that led us to adopt the [exclusionary] rule in the first place." 555 U.S. 135, 144 (2009). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* In other words, "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.*

In *King*, our appellate court considered the good faith exception when the officers exceeded the scope of a valid search warrant for the bottom unit of a duplex by searching the duplex's basement. 227 F.3d at 754. The officer executing the search warrant believed the basement was a "common area," included within the search warrant for the first-floor unit. *Id.* at 753. However, the court found the officer did not act in good faith because the circumstances of the search revealed the basement was not within the warrant:

> The agent's assertions that the basement was included in the
> common area of Defendant's downstairs unit of this two-family
> dwelling is not reasonable under these facts. Specifically, the
> basement of the duplex was not accessible to the general public—
> i.e., the basement could not be reached from the outside because
> the door was locked and could only be entered if one of the tenants
> had admitted the guest into the duplex, and it was established law
> in this circuit at the time of the search that a tenant in an apartment
> building has a reasonable expectation of privacy in the common
> area of a building not open to the general public.

*Id.* at 754. Similarly, in *Muse*, the district court found the good faith exception did not apply because the executing officers flagrantly disregarded the limitations of the search warrant. *Id.* (observing the fact the officers consulted the prosecutor before searching the second suite does not demonstrate good faith, because the prosecutor was not neutral and detached).

In contrast, in *United States v. Blomquist*, the court found the officers executing a search warrant for the defendant's residence and outbuildings acted in good faith in searching a chicken coop on the neighboring property. No. 2:17–cr–31, 2018 WL 3359007, **1-2 (W.D. Mich. July 9, 2018). In that case, the public records, upon which the affiant relied, erroneously attributed the property on which the chicken coop was located to the defendant. *Id.* at *2. Additionally, the coop appeared to be part of the defendant's "large, maintained back yard." *Id.* The court declined to suppress the evidence seized from the coop, finding that the officers reasonably relied on the search warrant to search the coop, which appeared to be an outbuilding within the defendant's curtilage. *Id.* Here, unlike in *Blomquist*, the officers did not rely on an erroneous description in the search warrant to search the trailer. However, like the officers in *Blomquist*, they believed that the trailer was an outbuilding on Defendant Torres's property based upon the trailer's proximity to the Defendant's home and driveway.

In the instant case, the Court finds the executing officers' search of the trailer was not a deliberate, reckless, or grossly negligent disregard of the limitations in the search warrant.

Instead, based upon the location of the trailer at the end of the driveway, which was the only pathway to the trailer, the officers were merely negligent in failing to consult the map attached to the search warrant before searching the trailer. Accordingly, the Court finds that the exclusionary rule should not be applied to exclude all the evidence seized from the search of 8537 Old Rutledge Pike Road, but only the evidence seized from the trailer should be excluded.

## V.    CONCLUSION

The Court finds that neither claim preclusion nor issue preclusion require the dismissal of the Indictment in this case. The Court also finds that the firearms seized from the Defendant's residence and garage were properly seized pursuant to a search warrant. The officers' erroneous search of a travel trailer on the adjacent property was negligent but was not a flagrant disregard of the search warrant. Thus, only the evidence seized from the trailer should be suppressed. The undersigned respectfully **RECOMMENDS** that the Defendant's motions to dismiss the Indictment [Docs. 18 & 37] be denied and his motion to suppress evidence [Doc. 16] be denied in part in that only the evidence seized from the trailer must be suppressed.[4]

Respectfully submitted,

Bruce Guyton

United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

29