UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:19-CR-125-TAV-HBG-1 |
| | ) | |
| RODOLFO TORES, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant, who has been charged in this Court with being an illegal alien in possession of firearms [Doc. 1], has filed a motion to suppress all evidence seized during the search of his property [Doc. 16], a motion to dismiss the charge on grounds of claim and/or issue preclusion [Doc. 18] and a motion to dismiss on the grounds of federal collateral estoppel [Doc. 37]. This Court referred these motions to United States Magistrate Judge H. Bruce Guyton, who issued a Report and Recommendation ("R&R") [Doc. 43], which is now before the Court. Defendant has raised several objections to the R&R [Doc. 44], the government has responded [Doc. 48], and defendant has replied [Doc. 50]. For the reason stated below, the Court will **OVERRULE** defendant's objections to the R&R [Doc. 44], **ACCEPT** the R&R [Doc. 43] in all respects, **GRANT IN PART** and **DENY IN PART** defendant's motion to suppress [Doc. 16], and **DENY** defendant's motions to dismiss [Docs. 18 and 37].

## I.    Background

The Court presumes familiarity with the R&R in this case, and it notes that defendant stated that he "generally agrees with" the magistrate judge's summary of the evidence [Doc. 44 at 3 (stating that he would add that Lieutenant Bryant admitted that the travel trailer could be a residence and that photographs submitted at the hearing clearly showed that the trailer was a residential type of structure)]. The government did not object to the magistrate judge's factual summary [Doc. 48 at 2 (arguing that the Court should adopt the R&R in all respects)]. Thus, for purposes of background, the Court incorporates the findings of fact articulated in the R&R, and specifically highlights the magistrate judge's statement of the case:

> On March 5, 2019, officers from the Knox County Sheriff's Office ("KCSO") executed a state search warrant for the Defendant's residence at 8537 Old Rutledge Pike Road, in Knox County, Tennessee. The search warrant authorized the search of the residence, garage, and outbuildings. The officers seized firearms and currency from the Defendant's house, a long gun and marijuana from the Defendant's detached garage, and thirty-five pounds of marijuana from a travel trailer. The trailer, which belonged to Defendant Torres, was located on 8533 Old Rutledge Pike Road, which belongs to his wife's parents.
>
> Based upon the evidence seized during the execution of the search warrant, the Defendant was charged with four state offenses: Maintaining a dwelling for drug use, possession of firearms with intent to go armed during the commission of a dangerous felony, drug distribution, and possession of drug paraphernalia. Knox County General Sessions Judge Tony W. Stansberry conducted a preliminary hearing on these charges on August 7, 2019. KCSO Lieutenant Chris Bryant testified at the preliminary hearing. At the conclusion of the hearing, Judge Stansberry dismissed the state charges.
>
> On August 6, 2019, the day before the preliminary hearing on the state charges, a federal grand jury returned the Indictment in the instant case,

charging Defendant Torres with being an illegal alien in possession of firearms.

[Doc. 43 at 3].

The Court also highlights these specific findings of fact, which were based upon the testimony and exhibits introduced at the suppression hearing:

> On March 5, 2019, KCSO officers executed a state search warrant for the residence, garage, and outbuildings located at 8537 Old Rutledge Pike Road, the property of Rudolfo Torres and Leslie Rodriguez. Officers seized firearms from the master bedroom and a firearm and marijuana from the detached garage. While walking the perimeter of the property following the search of the house, garage, vehicles, and shed, officers discovered a travel trailer at the end of the Defendant's driveway. Although KCSO Lieutenant Chris Bryant did not realize it at the time, the trailer was located across the property line, on 8533 Old Rutledge Pike Road. Lieutenant Bryant looked through the trailer's window and saw marijuana residue and a knife inside. Lieutenant Bryant directed the officers to break the padlock on the trailer's door and to search the trailer. Officer seized thirty-five pounds of marijuana from the trailer.

[*Id*. at 7].

The R&R addresses three separate motions filed by defendant: (1) his motion to suppress [Doc. 16]; (2) his first motion to dismiss, on grounds of claim and/or issue preclusion [Doc. 18]; and (3) his second motion to dismiss, on the grounds of federal collateral estoppel [Doc. 37]. In his motion to suppress, defendant argues that a search of a trailer located outside the bounds of his property exceeded the scope of the search warrant, and, accordingly, all evidence from the search of his property, and the trailer, should be suppressed [Doc. 17].

In his first motion to dismiss, defendant argues that the state court's prior dismissal of firearms charges was res judicata as to the federal firearms charge [Doc. 19 at 3, 7-8].

3

Defendant also argues that, based on the state court proceedings, the government was collaterally estopped from relitigating the suppression issue, as well as the firearm possession claim, because the issues were identical to those litigated in the state court [*Id.* at 9-10].

In his second motion to dismiss, defendant argues that this federal prosecution is barred by the Double Jeopardy Clause to the United States Constitution [Doc. 38 at 3]. Defendant contends that, when two sovereigns exercise concurrent jurisdiction over the same issue of law, they are in effect the same party, and a decision by one bars relitigation by another [*Id.* at 4]. Thus, he asserts that, once the state and federal government gained concurrent jurisdiction over the Fourth Amendment, they became the same sovereign for purposes of Fourth Amendment litigation [*Id.* at 9].

Based on his factual findings, the magistrate judge concluded that, under the dual-sovereignty doctrine, the state court's dismissal of the state offenses does not preclude the instant federal charge under res judicata [Doc. 43 at 11, 15]. The magistrate judge also concluded that this federal prosecution is not barred by collateral estoppel [*Id.* at 19]. As to the propriety of the search, the magistrate judge concluded that the officers' search of the trailer exceeded the scope of the search warrant [*Id.* at 23]. As to the remedy, however, the magistrate judge concluded that the officers did not unreasonably exceed the scope of the search warrant, and therefore, only the evidence seized from the trailer should be excluded [*Id.* at 25-26, 29].

Defendant now objects to several of the magistrate judge's conclusions [Doc. 44]. The government has responded in opposition to defendant's objections, resting on the arguments in its prior filings [Doc. 48].

## II. Standard of Review

A court must conduct a *de novo* review of those portions of a magistrate judge's report and recommendation to which a party objects unless the objections are frivolous, conclusive, or general. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "Objections disputing the correctness of the magistrate's recommendation, but failing to specify the findings believed to be in error are too general and therefore insufficient." *Stamtec, Inc. v. Anson*, 296 F. App'x 516, 519 (6th Cir. 2008) (citing *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006)). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" made by the magistrate judge. 28 U.S.C. § 636(b)(1).

## III. Analysis

As an initial matter, the government, in its response, contends that defendant has not raised any new arguments or issues than those raised before the magistrate judge [Doc. 48 at 1]. The government further argues that defendant fails to identify specific errors in the R&R, and thus, his objections should be overruled [*Id.* at 2]. In reply, defendant argues that his objections address the R&R's ultimate conclusions, as well as specific findings by the magistrate judge [Doc. 50 at 3]. Defendant further contends that

5

the government's response is a general and non-specific argument which constitutes a waiver of any opposition to his objections under Local Rule 7.2 [*Id*. at 6-7].

First, as to defendant's argument that the government has waived any opposition to the relief sought, pursuant to Local Rule 7.2, that rule states that "[f]ailure to respond to a motion may be deemed a waiver of any opposition to the relief sought." *See* E.D. Tenn., L.R. 7.2. Here, the government has responded to defendant's objections [Doc. 48]. Although the government's response is brief, and relies on prior filings, nothing in the Court's local rules prohibit reliance on prior arguments in an effort to streamline litigation. Accordingly, the Court does not find that the government has waived any opposition to defendant's objections.

Second, as to the government's contention that defendant's objections are insufficiently specific, the Court notes that, in his first, sixth, and eighth objections, defendant disagrees with the R&R's recommendation that his motions to dismiss be denied [Doc. 44 at 4, 14, 25]. In support of each of these objections, defendant provides arguments which are lifted directly from his memorandum in support of the relevant motions to dismiss [Compare Doc. 44 at 4-10 with Doc. 19 at 3-9; Doc. 44 at 14-23 with Doc. 38 at 3-12; Doc. 44 at 23-26 with Doc. 19 at 9-11].

Objections to a magistrate judge's R&R must be clear enough to enable the Court to discern the issues that are dispositive and contentious. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)). If "objections merely restate the arguments asserted in [a party's] earlier

motion, which were addressed by the magistrate judge's report and recommendation, the Court may deem those objections waived." *Modrall v. U.S. Dep't of Educ.*, No. 1:19-cv-250, 2020 WL 2732399, at *2 (citing *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004)).

Defendant's first, sixth, and eighth objections are restatements of arguments, rather than specific objections to discrete issues in the R&R. Notably, in his other objections, defendant provides more specific objections to the R&R's findings, relating to the ultimate conclusion that defendant's motions to dismiss should be denied. Those objections are proper objections to the ultimate conclusions reached by the magistrate judge. The instant objections, in which defendant merely lifts his arguments wholesale from his motions to dismiss, are not proper, specific objections. Accordingly, the Court will **OVERRULE** Objections 1, 6, and 8, but will consider the correctness of the magistrate judge's ultimate conclusion on the denial of the motions to dismiss in the context of defendant's other, properly raised, objections.

### A.    Motions to Dismiss on Claim and Issue Preclusion

The Court begins by noting that much of the confusion surrounding defendant's motions to dismiss involve the distinction between res judicata (claim preclusion) and collateral estoppel (issue preclusion).[1]  In the jurisprudence involving the application of those doctrines to federal criminal law, the courts have often been less than precise in using

---

[1] For the sake of clarity, in its analysis, the Court will use the more modern terms of "claim preclusion" and "issue preclusion" as adopted by the Restatement (Second) of Judgments. *See Allen v. McCurry*, 449 U.S. 90, 94 n.5 (1980).

7

the terms res judicata and collateral estoppel. *See Bravo-Fernandez v. United States,* 137 S. Ct. 352, 358 n.2 (2016) (stating that "res judicata . . . embraces both claim and issue preclusion"); *Hoag v. State of New Jersey*, 356 U.S. 464, 470 (1958) (describing "collateral estoppel" as "an aspect of the broader doctrine of *res judicata*"). Throughout this section, the Court will use the phrase "res judicata" or "collateral estoppel," as used by the Supreme Court in each decision, but will note how these terms appear to have been used somewhat interchangeably in this jurisprudence.

The Supreme Court first recognized that the doctrine of res judicata (and by implication, the accompanying doctrine of collateral estoppel)[2], which had long been recognized in the civil context, applied to bar a subsequent criminal prosecution in *United States v. Oppenheimer*, 242 U.S. 85 (1916). The Court concluded that safeguards against deprivation of personal liberty could not be less than those that protect from a liability in debt. *Id*. at 87. Quoting from English Judge Henry Hawkins, of the Queen's Bench Division, the Court summarized its holding as follows:

> Where a criminal charge has been adjudicated upon by a court having jurisdiction to hear and determine it, the adjudication, whether it takes the form of an acquittal or conviction, is final as to the matter so adjudicated upon, and may be pleaded in bar to any subsequent prosecution for the same offense. . . . In this respect the criminal law is in unison with that which prevails in civil proceedings.

---

[2] *See Ashe v. Swenson*, 397 U.S. 436, 443 (1970) (stating that "collateral estoppel" had been an established rule of federal criminal law since at least the *Oppenheimer* decision); Note, *The Due Process Roots of Criminal Collateral Estoppel*, 109 Harv. L. Rev. 1729 (May 1996) (stating that *Oppenheimer* applied the doctrine of collateral estoppel).

8

*Id*. at 88 (quoting *Reg. v. Miles*, L.R. 24 Q.B. Div. 423, 431). The Court further concluded that the Fifth Amendment's Double Jeopardy Clause was not intended to "do away with what in the civil law is a fundamental principle of justice." *Id.* For many years after *Oppenheimer*, the law of the land was that, while Double Jeopardy prohibited a second trial for the "same offence," U.S. Const., amend. V, the doctrine of res judicata was a defense that could be raised, "to conclude those matters in issue which the [prior] verdict determined though the offenses be different." *Sealfon v. United States*, 332 U.S. 575, 578 (1948).

The first sign of trouble for the endurance of this principle appeared in *Hoag v. State of New Jersey*, 356 U.S. 464 (1958). In that case, the Court noted that the doctrine of res judicata, which included the doctrine of collateral estoppel, had been widely employed in both state and federal criminal cases. *Id*. at 470-71. The Court then discussed, for the first time, whether this doctrine had any basis in the Constitution, concluding that it had "grave doubts" as to whether the doctrine could be regarded as a constitutional requirement, but, ultimately, declined to address the issue. *Id*. at 471. The Court noted, however, that both the state and federal courts had, on numerous occasions, declined to apply collateral estoppel in criminal cases because it was not possible to determine with certainty which issues were decided in a general verdict of acquittal. *Id*. at 472.

Thereafter, in the process known as "selective incorporation," the Supreme Court held that the Double Jeopardy Clause of the Fifth Amendment applied to the states through the Fourteenth Amendment, overruling its prior decision in *Palko v. Connecticut*, 302 U.S.

319, 328 (1937). *Benton v. Maryland*, 395 U.S. 784, 794, 808 (1969). One year later, the Supreme Court picked up where *Hoag* left off, but stated that, in light of *Benton*, the question was no longer whether collateral estoppel is a requirement of the Fourteenth Amendment's provision for due process, but instead, whether it is part of the Fifth Amendment's guarantee against double jeopardy. *Ashe v. Swenson*, 397 U.S. 436, 442-43 (1970). The Court ultimately concluded that the established rule of collateral estoppel in criminal cases is embodied in the Fifth Amendment's guarantee against double jeopardy. *Id*. at 445-46. The Court then held that a second prosecution for the same offense, but with a different victim, was impermissible under collateral estoppel as encompassed by the Double Jeopardy Clause, because the jury had already determined that there was at least a reasonable doubt that the defendant was one of perpetrators. *Id*. at 446.

In a concurring opinion, Justice Brennan stated that, because the Fifth Amendment's Double Jeopardy Clause is enforceable against the states, "federal standards as to what constitutes then 'same offence' apply alike to federal and state proceedings" because "it would be incongruous to have different standards determine the validity of a claim of double jeopardy depending on whether the claim was asserted in state or federal court. *Id*. at 450 (Brennan, J., concurring). Justice Brennan proposed that the Court adopt a "same transaction" test for determining whether charges were the same offense, which would require the prosecution to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction. *Id*. at 453-54 (Brennan J, concurring). Justice Harlan, however, also wrote a concurring opinion, stating that the

Court's opinion in no way intimates that the Double Jeopardy Clause embraces Justice Brennan's "same transaction" concept. *Id*. at 448 (Harlan, J, concurring).

Several years later, the Court declined to extend *Ashe* and the collateral estoppel component of the Double Jeopardy Clause to exclude, in all circumstances, relevant and probative evidence that is otherwise admissible simply because it related to alleged criminal conduct for which a defendant had been acquitted. *Dowling v. United States*, 493 U.S. 342, 348 (1990). The Court concluded that an acquittal in a criminal case does not preclude the government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof. *Id*. at 349. The Court also noted that a defendant bears the burden of demonstrating that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding. *Id*. at 350.

Finally, in recent years, the Supreme Court has further limited the scope of claim or issue preclusion in the context of federal criminal law. *Currier v. Virginia*, 138 S. Ct. 2144 (2018). In *Currie*r, the Court stated that "*Ashe*'s suggestion that the relitigation of an issue can sometimes amount to the impermissible relitigation of an offense represented a significant innovation in our jurisprudence." *Id*. at 2149. The Court explained that the test under *Ashe* is a "demanding one" that "forbids a second trial only if to secure a conviction the prosecution must prevail on an issue the jury necessarily resolved in defendant's favor in the first trial." *Id*. at 2150.

A plurality of the Court noted that the defendant had "point[ed] to issue preclusion principles in civil cases" and asked the Court to "import them for the first time into the

11

criminal law through the Double Jeopardy Clause." *Id.* at 2152. However, the plurality

noted that the Court had recently warned that issue preclusion principles should have only

"guarded application . . . in criminal cases." *Id.* (quoting *Bravo-Fernandez*, 137 S. Ct. at

358). The plurality noted that the text of the Double Jeopardy Clause speaks only of

prohibiting the relitigation of offenses, not the relitigation of issues or evidence. *Id.* The

plurality then stated:

> This Court's contemporary double jeopardy cases confirm what the text and
> history suggest. Under *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct.
> 180, 76 L.Ed 306 (1932), the courts apply today much the same double
> jeopardy test they did at the founding. To prevent a second trial on a new
> charge, the defendant must show an identity of statutory elements between
> the two charges against him; it's not enough that a substantial overlap exists
> in the proof offered to establish the crimes. Of course, *Ashe* later pressed
> *Blockburger*'s boundaries by suggesting that, in narrow circumstances, the
> retrial of an issue can be considered tantamount to the retrial of an offense.
> But, as we've seen, even there a court's ultimate focus remains on the
> practical identity of offenses, and *the only available remedy is the traditional
> double jeopardy bar against the retrial of the same offense—not a bar
> against the relitigation of issues or evidence*. Even at the outer reaches of
> our double jeopardy jurisprudence, then, this Court has never sought to
> regulate the retrial of issues or evidence in the name of the Double Jeopardy
> Clause."

*Id.* at 2153-54 (internal quotation marks, citations, and alterations omitted) (emphasis

added).

The plurality further stated that "any effort to transplant civil preclusion principles

into the Double Jeopardy Clause would quickly meet trouble." *Id.* at 2154. The plurality

acknowledged that the Double Jeopardy Clause embodied "a kind of 'claim preclusion'

rule," but stated that it still "bears little in common with its civil counterpart." *Id.* The

plurality noted that it had "emphatically refused to import into criminal double jeopardy

law the civil law's more generous "same transaction" or same criminal "episode" test. *Id*. (citing *Garrett v. United States*, 471 U.S. 773, 790 (1985)).

The plurality concluded that "civil preclusion principles and double jeopardy and different doctrines, with different histories, serving different purposes. *Id*. at 2156. The purpose of claim and issue preclusion is to promote judicial economy by preventing needless litigation, which the plurality stated "make[s] special sense in civil cases where often only money is at stake." *Id*. However, "the Double Jeopardy Clause and the common law principles it built upon govern *criminal* cases and concern more than efficiency. They aim instead, as we've seen, to balance vital interests against abusive prosecutorial practices with consideration to the public's safety." *Id*. (emphasis in original).

### 1. Claim Preclusion

As to defendant's motion to dismiss on the grounds of claim preclusion, the magistrate judge noted that defendant's argument raises issues at the intersection of the Double Jeopardy Clause and the Full Faith and Credit Clause [Doc. 43 at 9]. The magistrate judge concluded that the dual-sovereignty doctrine, which provides that a crime under one sovereign's laws is not the same offense as a crime under the laws of another sovereign, permits the instant federal prosecution, even though defendant already faced a state charge arising out of the same conduct [*Id*. at 10-11]. As to defendant's argument that Tennessee and the United States are the same sovereign, the Court found that defendant's argument conflated claim and issue preclusion [*Id*. at 11-14]. The magistrate judge also questioned defendant's argument that the doctrine of autrefois acquit bars a

13

second prosecution, even when the doctrine of autrefois convict would not, but concluded that, even if autrefois acquit were applied in this case, it would not preclude the instant federal charge, because the crimes charged in the state court and the crimes charged in this action are not "precisely the same" [*Id*. at 14-15].

Defendant's second, third, and fourth objections relate to the magistrate judge's application of Tennessee rules of claim preclusion. [Doc. 44 at 11-13]. In his second objection, defendant objects to the magistrate judge's conclusion that the Double Jeopardy Clause "is a sword, not a shield," and contends that nothing prevents Tennessee from providing more expansive criminal claim preclusion rules than those under the Double Jeopardy Clause [Doc. 44 at 11]. In his third objection, defendant objects to the magistrate judge's conclusion that the Fifth Amendment's "same elements" test applies to the definition of a "claim" under Tennessee law, arguing that Tennessee has, instead, adopted a "transactional approach" [*Id*. at 12]. In his fourth objection, defendant objects to the magistrate judge's conclusion that the state and federal government do not have the same interest for purposes of the claim preclusion analysis, noting that the R&R does not discuss any Tennessee cases addressing the definition of "same interest" [*Id*. at 13].

The doctrine of claim preclusion in federal criminal law is encompassed by the Fifth Amendment's Double Jeopardy Clause. In the civil context, claim preclusion prevents a party from raising a claim if (1) there is a final judgment on the merits in a prior action; (2) a subsequent suit is between the same parties or their privies; (3) an issue in the second lawsuit should have been raised in the first; and (4) the claims in both lawsuits arise from

14

the same transaction." *Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 766 (6th Cir. 2015). The Double Jeopardy Clause, on the other hand, prohibits a person from "being subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const., amend. V. In determining whether a criminal charge is the "same offence," for purposes of the Double Jeopardy Clause, the Supreme Court has instructed that courts must look to whether each offense contains an element not contained in the other, and, if not, they are the "same offence" for purposes of double jeopardy. *United States v. Dixon*, 509 U.S. 688, 698 (1993). This test is often referred to as the "same-elements test" or the "*Blockburger* test." *Id.* (referencing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). While the same-elements test certainly differs from the claim preclusion test in the civil context, it nonetheless encompasses the most similar rule in the field of criminal law. *See Currier*, 138 S. Ct. at 2154 (stating that the Double Jeopardy Clause "embodies a kind of 'claim preclusion' rule" even if the "rule bears little in common with its civil counterpart" and noting that "the only available remedy [in a criminal case] is the traditional double jeopardy bar against the retrial of the same offense—not a bar against the relitigation of issues or evidence") (plurality op.).

While, in the civil context, a federal court must give the same preclusive effect to a state court judgment that the judgment would receive in the rendering state, *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816-17 (6th Cir. 2010), defendant has not cited, nor is the Court aware, of any federal cases applying state law of claim preclusion in the criminal context. *See United States v. Archibald*, No. 3:10-cr-64, slip op. at 10 (M.D. Tenn. Feb. 23,

2011) ("the only preclusion/abstention doctrine that has been consistently and clearly cited as actually relevant [to determining the preclusive effect of a state court's suppression ruling in a subsequent federal action] is collateral estoppel"), *rev'd on other grounds*, 685 F.3d 553 (6th Cir. 2012) (district court "correctly rejected [defendant's argument on preclusion] because [defendant] had not established that a Tennessee court would give the previous courts' findings preclusive effect"). That defendant has not met his burden of showing that Tennessee law applies is ground enough to deny his motion to dismiss on the grounds of Tennessee claim preclusion law.

Moreover, the Supreme Court's jurisprudence regarding the dual-sovereignty doctrine undercuts defendant's argument that state law claim preclusion rules apply. The magistrate judge has already provided a detailed discussion of the law as it relates to the dual-sovereignty doctrine [Doc. 43 at 10-12]. Under this doctrine, "a crime under one sovereign's laws is not 'the same offense' as a crime under the laws of another sovereign," even if both sovereigns prosecute the individual for the same conduct. *Gamble v. United States*, 139 S. Ct. 1960, 1964 (2019). Accordingly, a state may prosecute a defendant under state law even if the federal government has prosecuted him for the same conduct under a federal statute, or vice versa. *Id*. In *Gamble*, the Supreme Court explicitly rejected the argument that the dual-sovereignty doctrine contradicted the common-law rights of the Double Jeopardy Clause as originally understood as rights stemming from the common law pleas of auterfoits acquit (prior acquittal) and auterfoits convict (former convictions). *Id*. at 1969. The upholding of the dual-sovereignty doctrine strongly implicates that a

16

federal court, presiding over a criminal matter, is not required to apply a state's claim preclusion law, even though the state might apply that law in a separate prosecution for the same offense. Because no court has addressed the applicability of a state's claim preclusion rules when addressing the permissibility of identical federal and state prosecutions, the Court is left to conclude that such state law claim preclusion rules are inapplicable in this context.

Because defendant has not met his burden of proving that state law claim preclusion rules apply in a federal prosecution, and Objections 2, 3, and 4, all presuppose that such law applies, those objections will be **OVERRULED**.

### 2. Issue Preclusion

As to defendant's motion to dismiss based on issue preclusion, the magistrate judge stated that the Sixth Circuit had addressed the question of issue preclusion in the context of the Fourth Amendment in *United States v. Dominguez*, 359 F.3d 839 (6th Cir. 2004) [Doc. 43 at 16]. In *Dominguez*, the Sixth Circuit held that, under Michigan law, the state and federal prosecutors were not in privity, and, even if they were, application of issue preclusion under such circumstance would have a dire effect on federal sovereignty [*Id.*]. The magistrate judge addressed the elements of issue preclusion under Tennessee law, and concluded that defendant had not established the element of a final determination and questioned whether the state and federal government were in privity [*Id.* at 17-20].

In his fifth objection, defendant contends that his first motion to dismiss was based, in part, on issue preclusion under state law, while his second motion to dismiss was based

17

on issue preclusion under federal law [Doc. 44 at 14]. Defendant faults the magistrate judge for failing to distinguish between these grounds [*Id.*]. In his seventh objection, defendant argues that the magistrate judge's conclusion as to his second motion to dismiss is based on grounds that defendant did not raise in that motion, again stating that the magistrate judge conflated the two grounds for his motions [*Id.* at 23].

In his ninth objection, defendant objects to the magistrate judge's conclusions that the state court judgment was not final and that the government did not have a fair opportunity to litigate [Doc. 44 at 26]. Defendant first notes that the government did not argue that the state court's judgment was not final, and thus, he did not have a fair opportunity to present his position on this matter [*Id.* at 27]. Defendant also argues that Tennessee does not require a dismissal with prejudice for issue preclusion to apply [*Id.*]. As to opportunity to litigate, defendant contends that the government does not argue, and the R&R does not find, that any substantive or procedural limitations were placed on the state that prevented it from fully litigating the suppression issue [*Id.* at 28]. Finally, for the reasons stated in his prior briefing, defendant objects to the R&R's conclusion that the state and the government were not in privity, and privity satisfies the requirement that the party to be precluded have a fair opportunity to litigate [*Id.* at 29].

### a. Conflation of Claims

As to his objections that the magistrate judge conflated his arguments under federal issue preclusion and state issue preclusion, the Court finds no merit to these objections. The magistrate judge fully addressed both federal and state issue preclusion, concluding

18

that "neither the Full Faith and Credit Clause nor Tennessee law require preclusion" [Doc. 43 at 20]. The magistrate judge also addressed defendant's argument that both the state and federal government exercised concurrent jurisdiction over the Fourth Amendment issue, discussed the cases cited by defendant, and concluded that the cases did not compel a finding that the United States and Tennessee are the same sovereign in this case. [*Id.* at 11-13]. Because the magistrate judge fully addressed each of these issues, and did not conflate the issues raised by defendant, Objections 5 and 7 will be **OVERRULED**. However, even to the extent that the magistrate judge could be deemed to have overlooked some portion of defendant's arguments relating to issue preclusion, the Court will fully address defendant's arguments below.

### b.       Federal Issue Preclusion

As discussed at length above, federal courts have applied a narrowly defined version of issue preclusion under the Double Jeopardy Clause. As the Supreme Court recently explained, the standard for obtaining federal issue preclusion under *Ashe* is a "demanding one" and federal issue preclusion "forbids a second trial only if to secure a conviction the prosecution must prevail on an issue the jury necessarily resolved in defendant's favor in the first trial." *Currier*, 138 S. Ct. at 2150.

In the context of addressing whether defendant had established that the state court adjudication was a "final determination" under state issue preclusion law, the magistrate judge concluded that dismissal of a charge at a preliminary hearing is not a "full and final determination of the admissibility of evidence" [Doc. 43 at 18]. The Court has reviewed

19

the state court documentation that defendant submitted with his motions to dismiss. The Court notes that the state court judgment merely reflects that an unspecified state charge was dismissed on August 7, 2019 [Doc. 19-3]. To provide more context, defendant has also submitted a transcript of a preliminary hearing, held that same day, before Judge Tony W. Stansberry in Knox County General Sessions Court [Doc. 26-1]. The transcript reflects that the state charges at issue were: (1) maintaining a dwelling for drug use; (2) possession of a firearm with intent to go armed during the commission of a dangerous felony; (3) a Schedule VI drug violation, between ten and 70 pounds; and (4) possession of drug paraphernalia [*Id*. at 4-5]. At the hearing, Lieutenant Chris Bryant with the Knox County Sheriff's Office testified about the execution of the search warrant at defendant's home. [*Id*. at 6-23].

After this testimony, defendant's counsel argued that the State could not establish that the drugs or guns found in the home belonged to defendant [*Id*. at 24]. Counsel also argued that the search of the trailer was outside the scope of the search warrant [*Id*. at 25]. However, counsel's primary argument was that "we don't have anybody putting him at the residence" or any "testimony that he even owns that residence." [*Id*. at 26]. Accordingly, defense counsel argued that the link between the drugs found at the home, where defendant was not present, and defendant, was too tenuous. [*Id*.]. At the conclusion of this argument, Judge Stansberry simply stated "I think he's right. I'm going to dismiss the cases." [*Id*. at 27].

The Court first concludes that federal issue preclusion under the Double Jeopardy Clause is inapplicable where, as here, a state court dismissed charges at a preliminary hearing, rather than a jury acquitting defendant of the charged offenses. As the magistrate judge noted, in Tennessee, dismissal of a charge at a preliminary hearing does not bar a grand jury from returning an indictment charging defendant with the same offenses that were the subject of the preliminary hearing [Doc. 43 at 18-19 (citing *State v. D'Anna*, 506 S.W.2d 200, 204 (1973)). Likewise, in the context of Kentucky law, a federal court has determined that a probable cause determination at a post-arrest preliminary hearing is insufficient to satisfy the requirements for preclusion. *United States v. Jimenez*, No. 5:13-cr-45-TBR-1, 2014 WL 2816018, at *4 (W.D. Ky. June 23, 2014). Indeed, the Sixth Circuit has stated that "[d]ismissal of an indictment prior to trial simply . . . does not bar subsequent prosecution for criminal acts described in that indictment under the doctrine of res judicata." *United States v. Pi*, 174 F.3d 745, 748 (6th Cir. 1999).

Because the Supreme Court has called for "guarded application of preclusion doctrine in criminal cases," *Bravo-Fernandez*, 137 S. Ct. at 358, the Court concludes that extending the form of issue preclusion *Ashe* recognized as encompassed by the Double Jeopardy Clause beyond issues necessarily decided by an acquittal, to also include issues necessarily decided by a state judge in a probable cause determination at a preliminary hearing, would far exceed the scope of the Double Jeopardy Clause. Additionally, even if *Ashe* were so extended, here, the Court cannot conclude what issue was "necessarily decided" by the state court judge, given that defense counsel presented multiple arguments,

21

and the state court judge did not specify which of these reasons for dismissal he found compelling. For these reasons, even to the extent that the magistrate judge could be deemed to have insufficiently addressed defendant's arguments relating to federal issue preclusion under the Double Jeopardy Clause, the Court concludes that defendant's motion to dismiss on this ground is due to be denied, and therefore, defendant's objections on this ground will be **OVERRULED**.

### c. Tennessee Issue Preclusion

The Sixth Circuit has held that, under the Full Faith and Credit Act, 28 U.S.C. § 1739, courts must normally give a state court judgment the same preclusive effect as it would be given under the law of the state, and this rule applies to issues adjudicated in state court criminal proceedings. *United States v. Dominguez*, 359 F.3d 839, 841 (6th Cir. 2004). In applying this standard, the Court notes that defendant relies largely on civil case law from Tennessee [*See* Doc. 44 at 25-29]. But, defendant points to no Tennessee case law indicating that Tennessee courts would apply the civil issue preclusion rules in determining the preclusive effect of a prior criminal judgment in a subsequent criminal proceeding. To the contrary, as discussed below, the Court's review of Tennessee case law indicates that, like federal courts, Tennessee courts apply a limited version of the issue preclusion doctrine in the context of criminal prosecutions.

Under Tennessee law, a defendant bears the burden of proving "by *clear and convincing evidence* that, in the earlier trial, the court or a jury necessarily decided the issue of fact which is an element at issue in the present indictment." *State v. Vickers*, 985 S.W.2d

22

1, 7-8 (Tenn. Crim. App. 1997) (emphasis in original). Much like the federal courts, Tennessee courts have recognized the doctrine of issue preclusion as part of their criminal jurisprudence "for a relatively short period of time." *State v. Thompson*, 285 S.W.3d 840, 849-50 (Tenn. 2009) (citing *State v. McKennon*, 6 S.W.3d 508, 511 (Tenn. Crim. App. 1998); *Vickers*, 985 S.W.2d at 7; and *State v. Allen*, 752 S.W.2d 515 (Tenn. Crim. App. 1988)). Indeed, as the federal courts have done, Tennessee courts have stated that the "doctrine of collateral estoppel in the criminal law stems from the constitutional protection against double jeopardy." *State v. Huskey*, 66 S.W.3d 905, 926 (Tenn. Crim. App. 2001).

Diligent research has revealed no Tennessee case law applying Tennessee civil rules of issue preclusion in the context of a subsequent criminal prosecution. Instead, the limited case law addressing issue preclusion in a subsequent criminal case appears to apply the same standards as federal courts apply to issue preclusion under the Double Jeopardy Clause. *See Thompson*, 285 S.W.3d at 846-852 (citing relevant federal cases, including *Ashe*, 397 U.S. 436); *Vickers*, 985 S.W.2d at 7 (citing *Ashe*, 397 U.S. at 443-44). Because it appears that Tennessee courts would apply the same federal standards in determining the preclusive effect of a prior criminal judgment in a subsequent criminal proceeding, the analysis above likewise renders defendant's arguments under state law meritless.

Nevertheless, even assuming that Tennessee courts would apply the civil rules of issue preclusion in this case, the Court still concludes that the magistrate judge correctly determined that defendant would not be entitled to preclusion of the issues of gun

23

possession or evidence suppression.  In the civil context, to prevail on a claim of issue preclusion in Tennessee, a party must establish:

a.   that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the  merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016) (quoting *Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009)).  Here, the magistrate judge concluded that elements (3), (4), and (5) were lacking [Doc. 43 at 18-21].  Defendant objects to the magistrate judge's conclusion on each of these elements [Doc. 44 at 26-29].

### (1)    Finality

As to finality, defendant argues that, although the dismissal of the charges against him in the state court was without prejudice, the state nevertheless elected not to submit the charges to a grand jury, and instead, let the dismissal stand [Doc. 44 at 27].  He also contends that a judgment need not be with prejudice to be final for purposes of Tennessee issue preclusion [*Id*.].

To the extent that defendant contends that the magistrate judge erroneously recommended denial of the motions to dismiss on this ground, because the government did not raise it and defendant did not have an opportunity to address it, the Court notes that such argument is a moot point, because the defendant has now been provided an

24

opportunity to argue the issue in his objections, which the Court has thoroughly read, and the Court has reviewed the issue *de novo*.

"[T]he only purpose of a preliminary hearing upon a criminal warrant is to determine whether there is probable cause to believe the accused committed the offense charged . . . and to fix the amount of bail in bailable offenses[.]" *State v. D'Anna*, 506 S.W.2d 200, 203 (Tenn. Crim. App. 1973). Tennessee courts have held that "[i]f the grand jury were precluded from investigating an alleged offense previously dismissed upon a preliminary hearing by a committing magistrate because he found no probable cause, such action by the magistrate would amount to acquittal of the accused. Of course, this cannot be." *Id*. At a preliminary hearing, "a decision that there is no probable cause does not preclude further prosecution." *Waugh v. State*, 564 S.W.2d 654, 661 (Tenn. 1978) (Fones, J., dissenting) (reasoning that, for this reason, appellate jurisdiction should not arise to review the scope of a preliminary hearing, the admissibility of the evidence therein, or the weight of the evidence adduced on the issue of probable cause).

Defendant admits that, even after Judge Stansberry's dismissal of the charges at the preliminary hearing, the State was free to indict him on the same charges [Doc. 44 at 27]. However, he notes that the State did not indict him after the dismissal [*Id*.]. But, ultimately, the State still remains free to bring these charges before a grand jury for indictment. Effectively, Judge Stansberry's dismissal of the charges was the equivalent of the dismissal of a civil case without prejudice, and dismissals without prejudice generally do not constitute a final judgment for purposes of issue preclusion. *See Gargallo v. Merill Lynch,*

25

*Pierce, Fenner & Smith, Inc.,* 918 F.2d 658, 664 (6th Cir. 1990) (stating that, because a counterclaim was dismissed as a sanction for discovery violations, and none of the factual or legal issues were actually litigated, issue preclusion was inapplicable); *J.P. Morgan Securities, LLC v. Porcher*, 15-10761, 2016 WL 3165727, at *3 (E.D. Mich. June 7, 2016) (stating that, although the Sixth Circuit has not addressed the issue, many other circuits have stated that a dismissal without prejudice is not a final judgment for issue preclusion purposes). Accordingly, the Court agrees with the magistrate judge's determination that Judge Stansberry's dismissal of the charges against defendant at the preliminary hearing was not a "final judgment," such that issue preclusion under Tennessee law would apply, and the Court will **OVERRULE** this portion of Objection 9.

### (2) Privity

As to privity, defendant simply relies on the arguments contained in his prior motions, stating simply that he "respectfully disagrees with the R&R's conclusion that the state and government were not in privity" [Doc. 44 at 29].

As the Court previously noted, if "objections merely restate the arguments asserted in [a party's] earlier motion, which were addressed by the magistrate judge's report and recommendation, the Court may deem those objections waived." *Modrall v. U.S. Dep't of Educ.*, No. 1:19-cv-250, 2020 WL 2732399, at *2 (citing *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004). Defendant's objection to the magistrate judge's determination that the state and federal prosecutors were not in privity for purposes of their respective prosecutions of defendant merely relies on arguments which he has lifted

26

wholesale from the briefing submitted to the magistrate judge [Compare Doc. 44 at 5-9 with Doc. 19 at 4-8]. Beyond merely resubmitting his prior briefing, in a copy-and-pasted format, defendant's only mention of the privity element is to state that, for the reasons he stated in that briefing, he disagrees with the magistrate judge's conclusion that the state and federal government were not in privity [Doc. 44 at 29]. Such a statement, and citation to previous arguments, is simply insufficient when objecting to a magistrate judge's R&R. Defendant points to no specific conclusion by the magistrate judge that he objects to, and instead, merely disagrees with the ultimate conclusion. For this reason, the Court finds that defendant has not stated any proper objection to the magistrate judge's conclusion that the state and federal government were not in privity, and the Court will **OVERRULE** this portion of Objection 9.

### (3) Full and Fair Opportunity to Litigate

As to full and fair opportunity to litigate, defendant contends that the state had a full and fair opportunity to litigate the issue, and, because the state and the federal government were, by his estimation, in privity, this element is satisfied [Doc. 44 at 28-29]. Defendant's arguments, however, assume a finding of privity. But, as discussed above, the magistrate judge found that the state and federal government were not in privity for purposes of defendant's state and federal prosecutions, and this Court has now determined that defendant has not raised any proper objection to that conclusion. Accordingly, because the state and federal government were not in privity, the fact that the state prosecutor may have had a full and fair opportunity to litigate the issues is irrelevant, because the federal

27

prosecutor did not have a full and fair opportunity to litigate the same issues. Thus, the Court will **OVERRULE** the remaining portion of Objection 9.

### 3. Federal Interests

Alternatively, even if there were some law supporting defendant's claim that state law civil claim and issue preclusion rules apply in this federal prosecution, and assuming, without deciding, that such state law civil preclusion rules would bar the instant prosecution, the Court would decline to apply Tennessee's civil preclusion rules on the grounds of federal sovereignty.

Even in the civil context, "federal reference to state law will not obtain . . . in situations in which the state law is incompatible with federal interests." *Semtek Intern Inc. v. Lockheed Martin Corp*., 531 U.S. 497, 509 (2001) (addressing the appropriate choice of law to apply in determining the claim-preclusive effect of a federal diversity judgment in another state court). In *Dominguez*, the Sixth Circuit noted that "[e]ven if [state] law did create privity between the federal and state governments as a matter of law, we have grave doubts as to the propriety of estopping a federal prosecutor on these grounds," because doing so could allow the state to "gravely affect the powers of the United States acting as sovereign in its own courts." 359 F.3d at 845. The Court stated that, the Full Faith and Credit Act gives state courts and legislatures "considerable influence" over subsequent litigation in federal court, which serves the interests of comity. *Id*. The Court cautioned however that "to promote comity is one thing, to surrender sovereignty quite another." *Id*.

28

Ultimately, even if the Court were to apply Tennessee's civil rules of claim or issue preclusion, as defendant suggests, and such rules, in fact, counseled preclusion of the charges or issues before the Court in this criminal matter, the Court would decline to apply such state law, because it would be contrary to federal interests. Allowing a state court judge's probable cause determination at a preliminary hearing to preclude federal prosecutors from filing federal charges based on the same evidence would confer too much power over the federal government to the state judge. Moreover, such would undermine the sovereignty of the federal government, and would have significant implications for the federal courts' double jeopardy jurisprudence, which has repeatedly held that the state and federal governments, as sovereigns, may each bring charges based on the same criminal conduct. *See Gamble*, 139 S. Ct. at 1964. Accordingly, in the alternative, the Court would **OVERRULE** Objections 1 through 9 on the ground that application of state preclusion law in this instance would be severely adverse to federal interests.

### B. Motion to Suppress

As to defendant's motion to suppress, the magistrate judge agreed with defendant that the trailer was not within the curtilage of defendant's home, and the search of the trailer exceeded the scope of the search warrant [Doc. 43 at 23]. With regard to remedy, however, the magistrate judge concluded that the officers did not unreasonably exceed the scope of the search warrant, noting that the warrant and supporting affidavit expressly reference the search of outbuildings and the location of the trailer suggested that it was linked to defendant's property [*Id*. at 25-26]. Thus, the magistrate judge concluded that the search

29

of the trailer did not convert the entire search into a general search, and only the evidence seized from the trailer was subject to the exclusionary rule [*Id*. at 26]. The magistrate judge also rejected the government's argument that the good-faith exception applied, but found that the officers' search of the trailer was not a deliberate, reckless, or grossly negligent disregard of the limitations in the search warrant, but was merely negligent, and, accordingly, only the evidence seized from the trailer should be excluded [*Id*. at 27-29].

As to the issue of suppression, defendant objects to the magistrate judge's: (1) recommendation that only evidence from the trailer be suppressed (Objection 10); and (2) conclusion that there should be no blanket suppression of evidence because the officers' conduct was merely negligent (Objection 11) [Doc. 44 at 29-37].

### 1.     Non-Specific Objection

In his tenth objection, defendant disagrees with the R&R's recommendation that his motion to suppress be denied, to the extent that he seeks blanket suppression of all evidence, and that only the evidence obtained from the search of the trailer be suppressed [Doc. 44 at 29]. In support of this objection, defendant provides argument which is lifted directly from his memorandum in support of his motion to suppress [Compare Doc. 44 at 29-35 with Doc. 17 at 3-8].

As noted previously, objections to a magistrate judge's R&R must be clear enough to enable the Court to discern the issues that are dispositive and contentious, *see Miller*, 50 F.3d at 380, and restatement of arguments from a prior motion is insufficient. *See Modrall*, 2020 WL 2732399, at *2. Because defendant's tenth objection, like Objections 1, 6, and

30

8, discussed *supra*, is a restatement of arguments, lifted wholesale from his prior filings, without any specific objection to the magistrate judge's R&R, the objection is not proper. Accordingly, the Court will **OVERRULE** Objection 10, but will consider the correctness of the magistrate judge's ultimate conclusion on the issue suppression in the context of Objection 11, which address specific points in the R&R.

### 2. Reasonableness of Officers' Conduct

With regard to suppression of evidence seized from the search of defendant's residence, the magistrate agreed with defendant that the search of the trailer, which was situated just outside of defendant's property line, exceeded the scope of the search warrant [Doc. 43 at 22-23]. No objections have been filed to that conclusion, and thus, the Court will **ADOPT** the conclusion that the search exceeded the bounds of the warrant. The question before the Court, however, is the appropriate remedy for this violation.

In his eleventh objection, defendant disagrees with the magistrate judge's conclusion that no blanket suppression of evidence should occur because the officers' conduct was merely negligent [Doc. 44 at 35]. Defendant objects to the magistrate judge's reliance on certain case law that was not raised by the government [*Id*.]. Defendant also contends that the officers' conduct in this case goes beyond negligence, and was grossly negligent and reckless [*Id*. at 36]. Defendant further objects to the R&R's distinguishing of the instant case from *United States v. King*, 227 F.3d at 753, and contends that the only difference between this case and *King* is that the officers' conduct here was worse [*Id*. at 37].

To the extent that defendant objects to the magistrate judge's reliance on case law not cited by the government, this Court's review of any issue brought before it is not limited to the case law presented by the parties. The Court may independently research issues, to ensure that it reaches the correct result. Moreover, even to the extent that such could be deemed error, defendant's argument is moot, as he has had the opportunity, through his objections, to raise his position with regard to cases not cited by the government, and the Court has conducted a *de novo* review.

"A search pursuant to a valid warrant may devolve into an invalid general search if the officers 'flagrant[ly] disregard . . . the limitations of [the] search warrant.'" *United States v. Garcia*, 496 F.3d 495, 507 (6th Cir. 2007) (quoting *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir. 1985)). The term "general search" is a term of art under the Fourth Amendment, which involves particular rules, policies, and remedies. *Id.* An officer flagrantly disregards the limitations of the search warrant if he "exceeds the scope of the warrant in the places to be searched[.]" *Id.* (internal quotation marks and alterations omitted). "The test for determining if the officers engaged in an impermissible general search is whether their search *unreasonably* exceeded the scope of the warrant." *Id.* (citing *Brindley v. Best*, 192 F.3d 525, 531 (6th Cir. 1999) (emphasis in original). The "remedy for such a sweeping Fourth Amendment violation is 'the suppression of all evidence seized during the search[.]'" *Id.* (quoting *Lambert*, 771 F.2d at 93 (emphasis added)).

In *United States v. King*, 227 F.3d 732 (6th Cir. 2000), the Sixth Circuit concluded that an officer's search of a basement in a two-family dwelling, when the warrant listed

only one unit of the dwelling to be search, made no mention of the basement, and the basement was not directly accessible from the listed unit, exceeded the scope of the warrant. *Id.* at 737-38, 743. In determining whether officers had flagrantly disregarded the limitations of the warrant, and thereby transformed the search into a general search, the Sixth Circuit concluded that the officer's search of the basement was not reasonable. *Id.* at 751. The Sixth Circuit pointed out that the basement was not a common area, for purposes of being included within the parameters of the search of the defendant's unit, and the nature of the location of the basement in the two-unit dwelling should have put officers on notice that the search warrant did not include this area. *Id.* The Court thus concluded that the officers' decision to proceed to search the basement without a warrant was flagrant and unreasonable under the facts, and suppressed the evidence located in the basement. *Id.* at 752-53.

Similarly, the Eastern District of Michigan recently concluded that, when officers had a warrant to search one suite in an office building, but elected to search a second, additional suite, officers exceeded the scope of the warrant. *United States v. Muse*, 729 F. Supp. 2d 905, 906 (E.D. Mich. 2010). In so holding, the court stated that no reasonable person could have concluded that the two suites were part of the same unit, because there was no access from one suite to the other, entry into the suite that was not listed in the warrant was restricted by a separate lock and key, the signage on the suites were distinct, and the name on the door of the unlisted suite identified a business that was not the focus of the investigation or even mentioned in the search warrant affidavit. *Id.* at 912. The

court thus concluded that the agents had constructive notice of the separateness of the units. *Id*.

As these cases display, ultimately, the determination of whether officers flagrantly disregarded the limitations of the search warrant, and thereby, transformed the search of defendant's property into an impermissible general search is a factual determination of whether the officers acted reasonably. *See Garcia*, 496 F.3d at 507. The magistrate judge provided a well-reasoned explanation for his conclusion that the officers' search of the trailer, while outside the scope of the warrant, was not "unreasonable," namely, that, based on the evidence presented at the motion hearing, (1) the search warrant specifically included outbuildings on the property; (2) the trailer was at the end of a gravel driveway shared by the property listed in the search warrant and an adjacent property; and (3) the only pathway to the trailer was via the driveway on defendant's property [Doc. 43 at 25-26]. In his objection, defendant does not contest any of these points.

Comparing his case to *King*, defendant notes that the trailer at issue, like the basement at issue in *King*, was clearly a residential structure that was not accessible to the general public [Doc. 44 at 37]. However, unlike *King*, where the warrant was silent regarding the basement, defendant contends that the warrant here "clearly said, *don't search that travel trailer*" [*Id*. at 37-38 (emphasis in original)]. The Court does not find defendant's argument compelling. To state that the warrant here clearly told officers "don't search that travel trailer," exaggerates the evidence presented. Instead, Lieutenant Bryant's testimony at the Court's suppression hearing was that a map attached to the warrant would

34

have indicated that the trailer was not on defendant's property, but he, nor his officers, consulted the map before searching the trailer [Doc. 43 at 6-7]. Certainly, the officers should have consulted the map before searching the trailer, but a map's indication of property lines is not as blatant a statement to not search the trailer as defendant would have the Court believe.

The Court acknowledges that, in light of the officers' access to a map, which Lieutenant Bryant admits would have indicated that the trailer was not on defendant's property [*id.*], the determination of whether the officers acted reasonably in searching the trailer is a close call. However, the Court finds that the factors cited by the magistrate judge, noted above, distinguish this case from others in which courts have determined that officers' search beyond the scope of a warrant was unreasonable and converted the search into a general search under the Fourth Amendment. On balance, these factors indicate that, although the officers exceeded the scope of the search warrant in searching the trailer, their actions in doing so were not unreasonable, and did not convert the search into a general search.

Notably, the remainder of defendant's objection relates to the magistrate judge's apparent alternative holding that, even if the officers conducted a general warrant, exclusion of all of the evidence in this case was not proper in light of *Herring v. United States*, 555 U.S. 135, 144 (2009), in which the Supreme Court held that the exclusionary rule only applied to deliberate, reckless, or grossly negligent conduct, or, in some circumstances, recurring or systemic negligence [Doc. 43 at 28-29]. Defendant devotes

35

much of his objection to asserting that the officers' conduct here constituted gross negligence and recklessness [Doc. 44 at 36]. However, before the Court would even need to address this issue, the Court would first need to conclude that the officers did, indeed, act unreasonably, such that they could be deemed to have flagrantly disregarded the limitations contained in the search warrant. Because the Court has concluded that the officers did not, in fact, act unreasonably in searching the trailer, even though such was beyond the scope of the warrant, the Court declines to address this alternative holding. Accordingly, the Court will **OVERRULE** defendant's Objection 11.

## IV. Conclusion

For the reasons discussed herein, and upon careful and *de novo* review of the record and the law, the Court hereby **OVERRULES** defendant's objections to the R&R [Doc. 44]. The Court **ACCEPTS** the R&R in all respects, including the magistrate judge's recommendation that defendant's motions to dismiss the indictment be denied, and that the evidence seized from the trailer be suppressed, but the remaining evidence be permitted [Doc. 43]. Accordingly, the Court hereby **GRANTS IN PART** and **DENIES IN PART** defendant's motion to suppress [Doc. 16], and **DENIES** defendant's motions to dismiss [Docs. 18 and 37].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

36